CASE 97—ACTION BY JESSE LONG'S ADMR. TO RECOVER DAMAGES FOR
THE DEATH OF PLAINTIFF'S INTESTATE.—JUNE 14.

# Long's Admr. v. Illinois Central R. R. Co.

APPEAL FROM HARDIN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

MASTER AND SERVANT—DANGER INCURRED IN OBEDIENCE TO ORDER OF
SUPERIOR.

Held: The principle that the servant may lawfully obey the orders
of his employer relying on his superior knowledge and judgment
applies where a section hand obeyed the order of the section
boss to ride on a hand car to his place of work when he knew
that a fast train was overdue, though the station where the
men boarded the car was not a telegraph station, and the boss
knew no more of the whereabouts of the delayed train than the
servant knew; and therefore the master will not be heard
to say that the servant assumed the risk of a col-
lision unless the danger was so obvious that a servant of
ordinary prudence, situated as he was, would not have obeyed;
and that is a question for the jury.

S. M. PAYTON, ATTORNEY FOR APPELLANT.

This is an appeal from a verdict and judgment entered under
and in conformity to a peremptory instruction erroneously given
as I contend, and from an order denying a motion for a new
trial.

Jesse Long, a section hand, was killed by a fast passenger
train going north at a very rapid speed, and overtaking and
striking a hand car on which deceased was riding in the same
direction under the order and direction of his foreman, and
in company with him and his fellow laborers.

There are three grounds upon which the appellant seeks to re-
verse this judgment which are as follows:

1. That the place of the work of deceased was dangerous
through the negligence of the appellee.

2. That deceased was not chargeable with contributory negli-
gence in going and being upon the hand car, because protected
from that imputation by the order of his master to go there

Long's Admr. v. Illinois Central R. R. Co.

and remain which grows out of the rule laid down by this court in the recent case of I. C. R. R. Co. v. Josey, 22 R., 1795.

3. The deceased was killed by a latent force, the existence of which he was not apprised or warned.

### AUTHORITIES CITED.

Shearman & Red. on Neg., secs. 185, 186, 194; Grand Trunk Ry. Co. v. Cummings, 106 U. S., 700; L. & N. R. R. Co. v. Shivell's Admr., 13 R., 905; Smith v. Baker App. Cas., 325, 354; Doing v. N. Y. O. & W. Ry., 151 N. Y.; (45 N. E., 1028) Abell v. Canal Co., 128 N. Y., 662; Morgan v. Iron Co., 133 N. Y., 170; Berrigan v. R. R. Co., 131 N. Y., 528; Fredenburg v. Northern Cent. Ry., 114 N. Y., 582; Flaheff v. L. & N. Ry., 9 R., 398; L. & N. R. R. Co v. Foley, 94 Ky., 226; Stephens v. Hannibal, &c. Ry., 96 Mo., 207; William Graver Tank Works v. O'Donnell Co., N. E. Rep., 831; I. C. Ry. Co. v. Josey, 22 R., 1795; Shortel v. City St. Joseph, 104 Mo., 114; City of Lebanon v. McCoy, 12 Ind. App., 500; Patterson v. R. R., 76 Pa. St., 391; Van Dusen G. & G. E. Co. v. Schellies, 55 N. E. Rep., 998; R. R. v. Egeland, 163 U. S., 93; Chicago, &c. Ry. v. Richards, 61 N. E. Rep., 21; Ill. Steel Co. v. Schmanowski, 44 N. E. Rep., 976; Baxter v. Roberts, 44 Cal., 187; Wood on Master & Servant, 716; Combs v. New Bedford Cordage Co., 102 Mass., 573; Ry. v. Archibald, 107 U. S., 665 (35 C. C. A., 566).

W. H. MARRIOTT, FOR APPELLEE.

### POINTS AND AUTHORITIES.

Long knew the train was expected and he had the same knowledge and means of information as to when it would arrive as his superior. Knowing all the facts he assumed the risk and can not recover. L. & N. R. R. Co. v. Shivell's Admr., 13 Ky. Law Rep., 902; O'Neil v. G. N. R. R. Co., 51 L. R. A., 532; Bailey's Master's Liability for Injuries to Servants, sec. 197, pp. 145, 171, 119; Elliott on Railroads, sec. 1288; Brown's Admr., v. L. H. & St. L. Ry. Co., 23 Ky. Law Rep., 1504; 2 Thompson on Negligence, p. 108; Williams v. L. & N. R. R. Co. 23 Ky. Law Rep., 1124; Fox's Admr. v. L. & N. R. R. Co., 20 Ky. Law Rep., 81; Mellott v. L. & N. R. R. Co., 19 Ib., 379; Baird Bros. v. Deering, 13 Ib., 271; Needham v. L. & N. R. R. Co., 9 Ib., 81.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant filed this suit to recover damages for the loss of life of his intestate by reason of the alleged negligence

of appellee, and at the conclusion of the evidence on both sides the court instructed the jury peremptorily to find for the defendant, although he had overruled this motion at the close of the plaintiff's testimony. The intestate was a section hand in the service of appellee, working under a boss whose name was Kron. He had been working for the company about three days at the time of his death, although it would appear from the proof that he had been in the same service under a previous employment. He was killed on September 10, 1900. On that morning about 6 o'clock the section boss, with his crew of seven men, including the intestate, left the section house on the hand car and went to Riney station. They waited there for some time for the passenger train known as No. 104, a fast train from the South, but it was late. An accommodation passenger train, known as No. 32, was due shortly also from the South. Riney is not a telegraph station. The section boss finally concluded that he could safely go to Otter creek, which was about two miles north of Riney, and was under the impression that the local passenger No. 32 would probably arrive before the fast passenger train No. 104. He accordingly ordered his men to get on the hand car and go to Otter creek. This they proceeded to do, and at each curve they stopped and looked and listened for the train behind them, but saw or heard nothing. After they had made three stops in this way, and when they had emerged from the last curve, and were running down the grade to the Otter creek switch, and not very far from it, one of the men on the car suddenly called out, "There she comes." The train was then emerging from a cut about 800 feet from them, and running, according to the proof for the plaintiff, 60 or 70 miles an hour. The hands on the car, except Long, immediately jumped off without standing on the order of their going. About the

time they reached the ground, or before they got up from the fall, the train struck the car. Whether Long did not know of the approach of the train, or realize how close it was to him, is not made clear by the proof. He remained on the car, and was thrown up into the air by the engine as high as the top of the smokestack, and his brains were knocked out. The proof for the plaintiff tended to show that he was so situated that he could not get off as quickly as the others, while that for the defendant showed that the section boss called to him to leave the car. But this was evidently just before the train struck it. He was 54 years of age, and was perhaps not as quick in his movements as the younger men. The proof of the plaintiff showed that there were two whistling boards south of the hand car, one for a road crossing and one for the station, and that the train did not whistle for either of these. The proof of the defendant showed that the train did whistle, and that it was running between 50 and 60 miles an hour. The schedule time of the train was 35 miles. On that morning there were two sections of No. 104. The train which struck the hand car was the first section, or an extra consisting of four or five sleepers, carrying excursionists to Ohio, but running on the time of the regular train, and as its first section. It had run from Paducah, 175 miles, without stopping, and was about 25 minutes late. Shortly after it came the second section of No. 104, or the regular fast train, and also the accommodation passenger train, known as No. 32, and they were all three at Otter creek together. It is urged for appellee that the intestate knew the train was late and overdue, and took the risk. It is urged for appellant that he acted under the orders of his foreman, and had a right to presume that his superior would not order him to go ahead with the hand car if there was danger. The

principle relied on is that the servant may lawfully obey the orders of his employer, relying on his superior knowledge and judgment. But it is insisted that this principle does not apply, as Riney was not a telegraph station, and each of the men on the hand car knew as much about the danger as the boss. The circuit court seems to have taken this view.

Kron had a watch, and so far as appears was the only man in the crew who had a watch that was running; but they all knew the time of the train, and that it was overdue. None of them knew that there was an extra on the road that morning, but as this was running on the time of the regular train, and was simply the front section of it, it did not materially affect the result. The train men had no intimation of the presence of the hand car on the track. No flag was put out by Kron, and no torpedoes or anything to give notice of danger ahead. In the American and English Encyclopedia of Law (volume 20 [2d Ed.] p. 120) the rule is thus stated: "Since the master is under a special duty to inspect and investigate risks to which the servant is exposed, and since the servant may rely upon the performance of this duty, the fact that the servant proceeds under the orders of the master in performing an act whereby he is exposed to unusual danger renders the master liable for a resulting injury to the servant, unless the risk of the act was fully realized by the servant, and was so apparent that no man of ordinary prudence, situated as he was, would have undertaken it." A number of cases are collected sustaining the text. See, also, to same effect, 1 Thomp. Neg., sections 192, 442. In section 445, it is said: "Where the negligence of one person has prepared a risk for another, and that other, proceeding in the discharge of his duty or in the course of his business, accepts the risk, and is hurt

in consequence of so doing, the question of whether he is guilty of contributory negligence is almost always a question of fact for the jury." A servant is not called upon to set up his unaided judgment against that of his superiors. He may rely upon their orders. Ward v. Railroad Co., (23 R., 1326) (65 S. W., 2). As has been well said, the servant's dependent and inferior position is to be taken into consideration: and if the master gives him positive orders to go on with the work, and the servant is injured, he may recover, unless the work was so obviously dangerous that a servant of ordinary prudence, situated as he was, would not have obeyed.

In this case Long was a mere laborer. The section foreman under whose direction he worked represented the master, and it was Long's duty to obey his orders in the usual course of business. When he received an order it was not his duty to sit in judgment upon its propriety, or to enter into a discussion with him as to the facts upon which it was based. He had a right to presume that improper orders would not be given, and to assume that the section foreman would not direct him to take risks that were improper. If he was injured while obeying the orders of his superior and by reason of his negligence, he may recover, unless the risk was such that a person of ordinary prudence, situated as Long was, would not have taken it. In determining whether Long should have obeyed the orders of his superior, it must be borne in mind that the crew were out on the road, and that if Long had not obeyed he could not have remained with the crew. So far as appears, he knew nothing about the running of the trains, and was not required by his employment to know about them. It was the section boss' duty to control the movements of the crew, and to do this with proper regard to their safety. Long had a right to

rely on his superior knowledge and judgment as to the
safety of proceeding with the hand car under the circum-
stances, unless the facts actually known to Long were such
that a servant of ordinary prudence, situated as he was,
would not have taken the risk, and this was a question for
the jury. In an exhaustive note on this subject to the case
of Dallemand v. Saalfeldt, 48 L. R. A., 755 (s. c. [Ill. Sup.]
51 N. E., 645, 67 Am. St. Rep., 214), the editor, after point-
ing out the conflict of authority on the question, says:
"Some judges, following out the analogy of the doctrine
stated in the last section, have held that the rule by which
contributory negligence is inferred, as matter of law, from
the undertaking or continuance of work which entails an
abnormal risk of which the servant was aware, involves the
corollary that the addition of the element of a direct or-
der will not prevent the defense from taking effect if the
servant understood the perils to which he would be exposed
in obeying that order. . . . But by almost all courts,
including those who apply the rule just referred to (see
Pennsylvania, Illinois and North Carolina cases cited infra),
it is held that the fact of the servant's having
been directly ordered to do the act which caused the
injury introduces into the situation a differentiating cir-
cumstance, which will render his contributory negligence
a question for the jury in nearly every conceivable state of
the evidence. It does not follow that because the servant
could justify a disobedience of the order he is guilty of neg-
ligence in obeying it. . . . Hence we find it laid down in
a leading case that where, in obedience to an order, the
servant performs a duty which, though dangerous, is not
so dangerous as to threaten immediate injury, or where it
is reasonably probable that the work may be safely done
by using extraordinary caution or skill, he may recover if

injured. . . . In other cases the same principle is expressed by a restrictive form of statement, the servant being held entitled to obey a specific command of his superior without necessarily incurring the consequences of contributory negligence, unless the execution of that command involves a hazard which no ordinarily prudent person would have subjected himself to." In support of these principles, the following instances are given in which the servant was allowed to recover: Where a section hand obeys orders to take a hand car off the track, when a train is close at hand; or where a section man undertook to get two stones off the track when a train was approaching; or where a brakeman jumped from a moving train; or where a laborer was injured by the fall of a large wheel which he was helping to move down an incline; or by the caving of a bank; or by the explosion of a blast over which he was ordered to work. These principles control this case. If a gravel train had stopped at Riney that morning, and waited for the passenger until it was past due, and the conductor had then concluded to go on to Otter creek ahead of the passenger train and had ordered the hands aboard it would hardly be maintained that if the train had been run into by the passenger before it reached Otter creek, and one of the laborers killed, the company would not be responsible. Yet this is, in substance, the case we have; for the section boss has as full control of the hand car as the conductor has of the gravel train. The hands on the gravel train would not be required to inquire what orders the conductor had, or what emergency induced him to go forward, or what reason he had for supposing it to be safe. All this applies equally to the laborer working under the section boss. Long was simply riding on the hand car in obedience to the orders of his boss, who was

taking him to the place of work, and for some reason was anxious to get there as quickly as he could.

Judgment reversed. and cause remanded, with directions to grant appellant a new trial.

Whole court sitting.

Judges DuRelle and O'Rear dissent.