# Louisville & Nashville Railroad Company v. Elmore's Administrator.

(Decided May 28, 1918.)

## Appeal from Madison Circuit Court.

1. Railroads—Injury to One Using Track—Ordinary Care—Instructions.—Plaintiff's decedent was a section hand and he and a companion were riding on a hand car which was propelled by them and in their charge, going to their homes after a day's work, which use of the hand car was with the permission of the section foreman. A train approaching from the rear collided with the hand car, killing plaintiff's decedent and injuring his companion. The company was sued under a claim that it was negligent as to decedent in failing to signal for a public crossing to the rear and about a half mile distant, and that it failed to have its engine equipped with a head light. Held, that to one thus using its track the agents and servants in charge of the train owed no duty except to exercise ordinary care to avoid injuring him after his peril was discovered, and that the record shows that such care was exercised after the discovery of the peril, all of which authorized a peremptory instruction in favor of defendant.

2. Railroads—Use of Private Crossings.—The rule that one using a private crossing near a public one is entitled to rely upon signals for the public crossing, as was his custom, commonly known as the doctrine of the Cahill case, applies only to one using the private crossing for the purpose of crossing the railroad track, and not to one using the railroad track itself.

BURNAM & BURNAM, SHELBY, NORTHCUTT & SHELBY and BENJAMIN D. WARFIELD for appellant.

CHENAULT & WALLACE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

John Elmore, while riding on a hand car upon the track of the Louisville & Nashville Railroad Company, in Madison county, on November 20. 1916, at about 5:30 P. M., was killed by a train approaching from the rear and colliding with the hand car. His administrator brought this suit against the railroad company to recover damages accruing to his estate because of his death, charging in a general way that the decedent was killed as a result of the negligence of the defendant, its agents and servants, in the operation of the train which collided with the hand car.

The answer contained a general denial of the averments of the petition and a plea of contributory negligence, which was denied, and upon trial the plaintiff recovered a judgment for the sum of $1,200.00. Complaining of the judgment the defendant prosecutes this appeal.

The accident occurred some two and one-half or three miles north of the town of Berea, about fifty or sixty yards south of a private crossing, and something near a mile north of a public crossing. The hand car and the train were both moving north. Between Berea and the place of the accident there was but one public crossing, being the one just mentioned, but there were some two or three private crossings, and it is insisted by plaintiff, both in the evidence introduced and in argument of counsel here, that the defendant was negligent in failing to give signals for not only the public crossing about a mile south of the place of the accident, but likewise failed to signal for the private crossing between the place of the accident and Berea, which, if done, as is insisted, plaintiff's decedent would have had warning of the approach of the train in time to avoid the accident. It is further insisted upon as an act of negligence that the train which produced the collision was not equipped with a headlight, or if so, that it was not burning so as to enable the decedent to discover the approach of the train from the rear by the reflection of the light upon the track ahead, and thereby enabling him to avoid the accident.

The proof shows that at that hour of the day and at that season of the year it was practically dark. Elmore was a section hand and had been at work as such for fifteen or sixteen years. The day's work had closed at five o'clock and the crew had gone into Berea, but Elmore and two other section hands lived north of Berea, near the railroad track, and with the permission of the section boss they used the hand car to transport themselves to their respective homes. One of them had left the car at the public crossing, while the decedent and another proceeded along the track and were both on the car at the time of the collision, the companion of the decedent receiving slight injuries from which he eventually recovered.

Upon the issue as to whether signals were given for the public crossing south of the accident by the train which collided with the hand car, the evidence largely preponderates that signals were given for that crossing

and for at least some of the private crossings between the place of the accident and Berea. No one disputes but that the proper signals were given for the town of Berea, and which were heard by a number of people in the vicinity of the accident, as were also the signals given at the public crossing, but the surviving companion of the decedent, as well as one or two other witnesses who testified for the plaintiff, say that they did not hear such signals. They do not show that they were in a condition to hear the signals had they been given, except the fact that they were near enough to have heard them if they were so circumstanced at the time and their attention was not otherwise attracted.

Upon the point concerning the burning of the headlight, all the evidence shows that there was a burning headlight, and the only circumstance even slightly indicative of the contrary, is that the surviving companion of the decedent says that he did not see any reflection of the light upon the track around and ahead of the hand car before the collision. Besides the servants in charge of the train, and others upon it, testifying to the burning of the headlight, witnesses who saw the train back up after the accident say that it was then burning.

However, the question still remains whether the defendant is liable for either of such alleged acts of negligence, for if it did not owe a duty to decedent to give the signals which it is claimed were not given, or to have the engine equipped with a head light, it would necessarily follow that it was not guilty of negligence in failing to do either of those things. In support of the contention that it was negligence to fail to give the signals complained of we are referred to the case of Cahill v. Cincinnati, &c. Ry. Co., 92 Ky. 345, and other cases from this court following it. In that case it was held that one about to use a private crossing constructed for his benefit under a contract with the railroad company was entitled to rely upon and have the benefit of signals at a near-by public crossing, which signals had been customarily relied upon by those entitled to use the private crossing, and that a failure to give signals at the public crossing would constitute negligence toward one about to use the private crossing under the circumstances narrated. But the rule was strictly confined in its application to the benefit of one about to use the private crossing in passing over the railroad track, and this court has

consistently confined the application of the doctrine of that case within such limitations and has never extended it to cases other than for the protection of those about to use the private crossing. N. N. & M. V. Ry. Co. v. Deuser, 97 Ky. 92; L. & N. R. R. Co v. Vittitoe, 19 Ky. L. R. 614; Elliott v. L. & N. R. R. Co., 30 Ky. L. R. 472; C. N. O. & T. P. Ry. Co. v. Harrod's Admr., 132 Ky. 445; L. & N. Ry. Co. v. Redmon's Admx., 122 Ky 386; L. & N. Ry. Co. v. Jenkins, 168 Ky. 512; L. & E. Ry. Co. v. Smith's Admr., 172 Ky. 117. The same confining effect to the require- ment of signals was announced in the case of Shackel- ford's Admr. v. L. & N. R. R. Co., 84 Ky. 43, decided by this court some five years prior to the Cahill case. Since the decedent was not using or attempting to use any char- acter of crossing at the time he was injured, the rule sought to be invoked by counsel for appellee has no ap- plication under the facts of this case. If it be conceded —a fact which we do not feel called upon to determine— that decedent at the time of his death was rightfully upon the track of the defendant because of the permission of the section foreman for him to use the hand car, he still occupied no greater relationship to the defendant than the foreman of a section crew engaged in working upon the track during work hours, for at the time the car was in his and his companion's charge, and it was being used by them for their own benefit. They were in charge of that car at that time, and there is no question here as to whether they were at the time performing duties for the master, who would then be obligated to fur- nish a reasonably safe hand car, because the injury com- plained of is not the result of any such failure. Assum- ing then that defendant owed to the decedent at the time the same duties that railroad companies generally owe to those working upon its tracks, let us briefly consider what such duties are, and whether under them the defend- ant is liable in this case.

The two cases of C. N. O. & T. P. Ry. Co. v. Swann's Admx., one reported in 149 Ky. 141, the other in 160 Ky. 458, had under consideration, according to our view, the direct question here involved. Swann, the decedent, was the acting foreman of a crew engaged in work upon or about the defendant's tracks. He was killed by being struck by one of defendant's trains. He was at that time working for the defendant, and it was complained that the master was guilty of negligence in running its trains

at an excessive rate of speed, and that it failed to give signals of its approach to the place where Swann was working. In each case it was held that it was Swann's duty to himself to ascertain and learn of the approach of trains and to keep out of their way. A number of cases are referred to in that opinion, both from this and other courts, and upon a final summing up the court said: "It was the duty of Swann, as foreman of this work, to keep advised of the time of trains, so that he might warn the men under him of their approach, and also to keep the track free from tools and material used by the men in the progress of the work, and he was required to and did keep a watch as well as a time card. In short, one of his duties was to keep a look-out for the approach of trains so that the track would be safe and the men under his charge protected."

Cases announcing a similar doctrine are Coleman v. Pittsburg Co., 139 Ky. 559; Conniff v. L. & H. R. R. Co., 124 Ky. 763; Wickham v. L. & N. R. R. Co., 135 Ky. 288; L. & N. R. R. Co. v. Hunt, 142 Ky. 778; Blankenship v. Norfolk & Western Ry. Co., 147 Ky. 260; C. N. O. & T. P. Ry. Co. v. Harrod, 132 Ky. 445; C. N. O. & T. P. Ry. Co. v. Yocum, 137 Ky. 117; same case, 143 Ky. 700; L. H. & St. L. Ry. Co. v. Jolly's Admr., 28 Ky. 989; and L. & N. R. R. Co. v Seeley's Admr, 180 Ky 308 In the Harrod case, *supra,* in setting forth in concrete form the respective duties of the parties under almost identical facts to those we have here, the court said:

"If Harrod had been a section workman in the yards at Georgetown, his case would not have been less than it is. Section men work in railroad yards, as well as in the country, at all times, and may reasonably be expected there at any time. They must be aware of the time of the running of the trains over the track on which they are at work. Even though those in charge of a fast train knew they were working at that point, or might reasonably be expected to be working there, they also knew it was their duty to maintain a clear track for that train, and to themselves to keep out of its way, as they well could. Would the speed of the train, even though negligence to the passengers or licensees, have been negligence as to them? We think not, and it would make no difference whether they were in the yards at Georgetown, at Kincaid, or in the country where there was no station; for it must always be borne in mind

that negligence toward a person is the antithesis of a duty owing to that person."

In the second Swann case, *supra,* the excerpt just made from the Harrod case is quoted and approved. In the two Yocum cases, *supra,* the decedent was a signal inspector who was rightfully using a tricycle on the track. It was insisted that the railroad company was negligent by failing to have a headlight on the engine, but this court in the first opinion said: "We also assume that the company was guilty of negligence in failing to have its headlight burning; but its negligence in this particular—and it is the only negligence complained of—will not save the case for appellee." This statement of the law was reiterated in the last opinion in that case.

Many other cases from this court have a direct bearing upon the question involved, but we deem it unnecessary to prolong this opinion by pointing them out. What has been said is sufficient to show that those employed upon railroad tracks are required to take notice of and anticipate the running of trains, and that the operators of trains are not required, save, perhaps, under exceptional. and extraordinary circumstances,· to anticipate the presence of such employees upon the track or to take such steps as may be necessary to prevent injuries to. them, except after discovering their peril. Since there is no duty to warn such employees of the approach of trains, it would necessarily follow that they would not be entitled to demand that signals of the approach be given nor to any other equipment which might warn them of the approach of trains, such as headlights on engines. If there were no such duty owing to that class of employees, there would be no negligence in failing to comply with such alleged duties. This being true, the only duty which the defendant owed to the decedent in this case was to exercise ordinary care to prevent injuring him after his presence upon the track was discovered. Upon this point there is no contrariety of proof. All of it shows that the agents and servants were on the lookout ahead, which, however, was not due the decedent, and as soon as they saw the perilous situation of the decedent and his companion everything possible was done to stop the train before the collision, but without avail.

We have not discussed the question of· contributory negligence for failing to observe the block signals indicating the approach of the train, which is presented both by

the pleading and by testimony, because of our conclusions that the record fails to show a case of negligence on the part of the defendant. The court was therefore in error in overruling the motion made by counsel for defendant for a peremptory instruction in its favor, and if upon another trial the proof should be substantially the same as it was upon this one, and such an instruction should be offered, the court will sustain the motion and give it to the jury.

Wherefore, the judgment is reversed with directions to proceed in accordance with this opinion.

For modification of opinion in above case, see 181 Ky. 227.