## Williams' Administrator v. Chesapeake & Ohio Railway Company.

(Decided June 21, 1918.)

### Appeal from Greenup Circuit Court.

1. **Master and Servant—Employers' Liability Act—When Servant is Engaged in Interstate Commerce.**—A member of a section crew engaged in repairing and maintaining the tracks of an interstate carrier, who was struck and killed by an extra train while rid-

ing on a hand car from his place of work to a nearby station in obedience to the order of his foreman to meet him at that point with the hand car, was at the time of the accident employed in interstate commerce within the meaning of the Federal Employ-ers' Liability Act.

2.  Master and Servant—Federal Employers' Liability Act—Action for Death—Surviving Parents—Dependency—Pecuniary Benefits —Evidence—Sufficiency.—In an action for damages for the death of an employee of an interstate carrier, who was unmarried and childless, evidence examined and held to make it a question for the jury whether his surviving parents were deprived of pecu-niary benefits by his death.

3.  Master and Servant—Action for Death—Negligence of Train Dispatcher.—Where the members of a section crew were given an order to take a hand car and meet their foreman at a desig-nated station, a train dispatcher, who was not advised of the order and had no means of ascertaining that the order had been given, was not guilty of negligence in not advising those in charge of an extra train which collided with the hand car, of the exact spot where the section crew would be overtaken.

4.  Master and Servant—Action for Death—Negligence of Foreman of Section Crew—Evidence—Sufficiency.—A section foreman who, while en route to his work on a passenger train, threw off an order to the section crew to take a hand car and meet him at a designated station, was not guilty of negligence in ordering the men out on the track in front of an extra train when he did not know and had no opportunity to learn of the presence of the train on the track.

5.  Master and Servant—Railroads—Duty to Section Hands.—A rail-road company operating an extra work train through a dense fog owes to its section hands riding a hand car, the duty either to maintain a headlight to enable those on the hand car to dis-cover the approach of the train or of running the train at such a reasonable rate of speed as not to endanger their lives.

6.  Master and Servant—Railroads—Duty to Section Hands—Negli-gence—Question for Jury.—Where it was admitted that the head-light on the engine of an extra work train was not burning, and there were facts from which the jury might infer that the train was running at an excessive rate of speed, it was a question for the jury whether the operation of the train at the rate of speed shown by the evidence and without a headlight, was negligence.

7.  Master and Servant—Railroads—Public Crossing—Employees Us-ing Track—Duty.—The duty of a railroad company to keep a lookout and give warning of the approach of its train at public crossings, is confined to persons crossing the railroad tracks and does not extend to employees using the track itself.

E. E. FULLERTON, S. S. WILLIS and R. D. DAVIS for appellant.

WORTHINGTON, COCHRAN & BROWNING and PRICHARD & PUTNAM for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Walter Frazier, as administrator of Kaner Williams, deceased, brought this suit under the Federal Employers' Liability Act against the Chesapeake & Ohio Railway Company, to recover damages for his death. At the conclusion of the evidence, the trial court directed a verdict in favor of the defendant, and plaintiff appeals.

At the time of his death, Williams was a member of a section gang engaged in repairing and maintaining the tracks of defendant, an interstate carrier. He was 23 years of age and unmarried. His father and mother, who were very poor, lived on a small farm with their infant children, and he regularly contributed to their support.

Williams was killed under the following circumstances: On the morning of the accident, he and other members of the section crew met at Frost, a small station. They then rode a hand car to a point about one-half mile west of Frost. There they removed the hand car from the track, and unloaded their tools preparatory to the work of laying some rails. About that time train No. 5, a fast westbound passenger train, came along. S. F. Reed, the foreman of the section gang, was on this train. The nearest stop for the train was at South Portsmouth, a few miles west from where the section gang was located. As the train passed, Reed threw off a note directing the men to take the hand car and meet him at South Portsmouth. Thereupon Williams and three other members of the section gang placed the hand car upon the track and started toward South Portsmouth. Just as they reached a point near the crossing at Taylors, they were overtaken by extra work train No. 825, consisting of an engine and caboose. The hand car was then moving at from twelve to fifteen miles an hour, while the extra train was going much faster. Though it was clear elsewhere, the track at Taylors was enveloped in a very dense fog. The three other men on the hand car with Williams escaped injury, but Williams was killed by the collision. The extra started from Russell, and before leaving the engineer received an order to be on the lookout for the section gang between Siloam and Frost. On reaching Siloam, the engineer maintained a lokout, reduced the speed of the train, and gave the usual signals until the train passed the members of the section gang about one-half mile west

of Frost. After passing these men the engineer, who did not know that Williams and his fellow workmen had gone to South Portsmouth, increased his speed. On account of the fog at Taylors, he could not see the hand car until the train ran right upon it, and for the same reasons those on the hand car could not see the approaching train. The headlight on the engine was not burning, and with the exception of the sounding of the whistle when the engine was about three-quarters of a mile from Taylors, no signal of the approach of the train was given.

The first question to be determined is whether Williams was employed in interstate commerce at the time of the accident. As before stated, he was a member of a section crew whose duty it was to repair and maintain the company's tracks. For this purpose the crew had ridden to a point about one-half mile west of Frost, and were preparing to begin the work of laying rails when they received the foreman's order to meet him at South Portsmouth. When the accident occurred they were *en route* to South Portsmouth. In making the trip in obedience to the order of the foreman, Williams was discharging a duty of his employment. Like his trip from Frost to the point where he received the order, his trip to South Portsmouth was so directly and immediately connected with the repair and maintenance of the track, an instrument of interstate commerce, as to be a part of that work or a necessary incident thereto. We therefore conclude that deceased was employed in interstate commerce at the time of the accident. Erie R. Co. v. Winfield, 244 U. S. 320, 61 Law Ed. 1057, 37 Sup. Ct. Rep. 629; North Carolina R. Co. v. Zachary, 232 U. S. 248, 58 Law Ed. 591, 34 Sup. Ct. Rep. 305, Ann. Cas. 1914C 159; Lamphere v. Oregon R. & Nav. Co., 196 Fed. 336, 116 C. C. A. 156.

There was sufficient evidence of the dependency of the parents of the deceased, and of contributions made by him to their support, to make it a question for the jury whether they were deprived of pecuniary benefits by his death.

It remains to determine whether there was sufficient evidence of negligence on the part of the company to take the case to the jury. It is first insisted that the train dispatcher was negligent in ordering the engineer of extra No. 825 to be on the lookout for section men between Siloam and Frost, when the men were actually one-half mile west of Frost. With this contention we can not

agree. Here the order for the crew to go to South Portsmouth was suddenly given. The train dispatcher was not advised of this order and had no means of ascertaining that the order had been given. In view of the sudden movement of that portion of the section crew with which Williams was associated, the dispatcher could not be charged with either actual or constructive knowledge of their precise location and hence he was not guilty of negligence in not advising those in charge of the extra train of the exact spot where the section crew would be overtaken.

It is next insisted that the foreman was negligent in ordering the men on the track in front of the extra. We have ruled that it was negligence on the part of the section foreman to take his crew out on the time of a freight train that he knew with reasonable certainty would be met, Louisville & N. R. R. Co. v. Helm, 121 Ky. 645, 89 S. W. 709, or to order his men to ride on a hand car to their place of work when he knew that a fast train was overdue. Long's Admr. v. Illinois C. R. Co., 113 Ky. 806, 68 S. W. 1095. These cases, however, proceed upon the theory that the foreman was charged with knowledge of the movement of regular trains, and having such knowledge should not subject his men to unnecessary peril. In this case, the foreman himself was *en route* to his work. The train colliding with the hand car was not a regular train whose schedule time was fixed, but an extra train. The foreman was not apprised, and had no opportunity to learn, of its presence on the track. Under these circumstances he was not negligent in giving the order in question.

The duty of those in charge of the extra train presents a more serious question. Ordinarily a railroad company does not owe to track men such as the deceased, the duty to maintain a lookout, or to have its trains under reasonable control, or to give timely warning of their approach. Louisville & Nashville R. R. Co. v. Elmore's Admr., 180 Ky. 733, —— S. W. ——; C. N. O. & T. P. Ry. Co. v. Carter, 180 Ky. 765, ——S. W. ——. The reason for the rule is that section crews move about from place to place, and their presence on the track at any particular point can not be anticipated. Hence the law casts upon such employees the duty to exercise ordinary care to learn of the approach of trains and to keep out of their way. In view of this duty on the part of such em-

ployees, we conclude, that there is a corresponding duty on the part of the railroad company to furnish the means by which an approaching train may be discovered. In the recent case of Louisville & Nashville R. R. Co. v. Mullins' Admr., 181 Ky. 148, we held that the failure of a railroad company to maintain a headlight on its engine when it was dark was negligence as to a signal maintainer. There is every reason why the same rule should apply to the facts of this case. Here the train that collided with the hand car was an extra train. No one on the hand car was apprised of its coming. At the point of the accident the fog was so thick that the engine could not be seen until within forty feet of the hand car. While it is true that it was clear elsewhere, and that the extra train ran suddenly into the fog, yet we conclude that under the exceptional circumstances of this case, the company was charged with the duty either of maintaining a headlight on its engine to enable those on the hand car to discover the approach of the train, or of running the train through the fog at such a reasonable rate of speed as not to endanger the lives of its employees who had the right to be on the track. As it is admitted that the headlight was not burning, and there are facts from which the jury could infer that the train was running at an excessive rate of speed, in view of the surrounding conditions, there can be no doubt that it was a question for the jury whether the operation of the train at the rate of speed shown by the evidence and without a headlight, was negligence.

We conclude that the trial court did not err in refusing to permit plaintiff to show that the accident happened on or near a crossing which the public were accustomed to use in such large numbers as to impose upon the company the duty of anticipating their presence, and the consequent duty to keep a lookout, giving warning of the approach of the train, etc. This duty is confined to persons crossing the railroad track, and does not extend to employees using the track itself. Louisville & Nashville R. R. Co. v. Elmore's Admr., *supra;* C. N. O. & T. P. Ry. Co. v Carter, *supra*.

Being of the opinion that there was sufficient evidence of negligence as above indicated to take the case to the jury, it follows that the trial court erred in sustaining the railroad company's motion for a peremptory.

Judgment reversed and cause remanded for a new trial consistent with this opinion.