### Louisville & Nashville R. Co. v. Hyatt's Adm'x.

(Decided March 25, 1921.)

### Appeal from Laurel Circuit Court.

1. Railroads—Duties· of Track Walker—Lookouts.—The duties of a track walker includes those of inspecting the track, seeing .that it is in a proper state of repair, and of keeping a lookout for his own safety, and generally speaking trainmen are under no duty to give such employes warning of the approach of trains.

2. Railroads—Presence of Track Walker on Track.—Except under unusual and exceptional circumstances tarinmen are not required to anticipate the presence of track walkers on the track, nor to give to such employes warning of the approach of trains.

3. Railroads—Operation—Signals.—Those operating trains are not required to give signals of the train's approach to a curve unless there is a rule of the company requiring the giving of such signals, and a track walker has no right to rely upon the failure of the engineer to so signal the train's approach unless the nature, purpose and extent of the rule are such that persons sustaining the same relation to the company as does a track walker have the right to rely upon the giving of such signals.

BENJAMIN D. WARFIELD, H. J. JOHNSON and GEO. C. BROCK for appellant.

BRUNER BEGLEY, C. R. LUKER, L. F. THOMPSON and RAY C. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

August 5, 1917, Davis Hyatt, while employed by appellant as a member of a section crew, was killed by a train. His territory included the double track between

Livingston on the north and East Bernstadt on the south. Between these two points trains south bound are compelled to climb a considerable hill, and so great is the grade that it has been the custom for many years to have a "helper," that is an engine to pull or push heavy trains over the hill. This helper is turned on the Y at East Bernstadt and returns to Livingston on the north bound track. The helper makes several round trips each day. Between said stations is a decided curve, hence the name of "crooked hill" has been given to it by the trainmen.

On the day above mentioned, and for some time prior thereto, Hyatt had been acting as a track walker between said stations, it being his duty to inspect the track; to see that it was in proper state of repair; to keep a lookout for trains; to tighten any bolts that might be found loose and take whatever steps might be necessary to keep the track in good shape. Hyatt is shown to have been an experienced track walker.

The length of the boiler made it impossible for an engineer going north on crooked hill to see the track ahead. On the morning in question a freight train had been helped over this hill on the south bound track about 8:20 and the helper was returning on the north bound track. As it reached the hill it passed another freight train, south bound, pulling a large number of cars. Because of the curve and the passing south bound train, the fireman of the helper could not see the track for any distance ahead. The engineer of the helper says that as he was rounding the curve on this trip he did not see Hyatt before his engine struck him, but he saw him before he hit the ground. He thought at first he was jumping off the train and did not know the difference until he stopped his engine, went back and saw what had happened.

In this suit by his wife, as administratrix, damages were asked for his death. We are asked to reverse a judgment in her favor on several grounds. Appellant insists the jury should have been peremptorily instructed to find for it. Section men assume the risk of injury from approachng trains and must keep a lookout for their own salfety. Generally speaking those in charge of trains are under no duty to give such employes warning of the approach of trains. However, in unusual and exceptional cases, where it is or ought to be apparent to trainmen that a section hand is in danger and might be

unconscious of that fact it is their duty to warn him. Unless, therefore, this record presents such circumstances a motion for a directed verdict should have prevailed.

In Blankenship's Adm'r v. N. & W. Ry. Co., 147 Ky. 260, 143 S. W. 995, we have a case presenting facts in many respects similar to those found in the instant case. Blankenship was a track walker and had been assigned to a portion of the company's double track. He was doing some work on the track; this he stopped upon the approach of an east bound train, stepping to the north track. While there looking at the passing train he was struck by a west bound train and instantly killed. At the point of the accident the tracks curved sharply toward the southeast, so that the view of the enginemen upon the west bound train was so obscured by the east bound train that the engineer and fireman could not and did not see Blankenship until within 75 feet of him and it was then impossible to stop the train in time to prevent the accident. The train which killed Blankenship was an extra train and was not running according to a printed schedule, but the court said it was not necessary to supply a track walker with the information as to the approach of trains for his own protection as he works upon different parts of the track and his ordinary faculties of sight and hearing are entirely sufficient, and all that is usually required to protect him from the danger of moving trains. Further the company was under no duty to give him notice of the approach of trains; in the nature of the case it would be unreasonable and impracticable to do so. The duty was imposed upon him to take such reasonable care of himself in the performance of his duty as would prevent him from being injured by a passing train, and failing so to do he was guilty of the grossest negligence, for which he could blame no one but himself.

L. & N. R. R. Co. v. Elmore's Adm'r, 180 Ky. 735, 203 S. W. 876, involved the liability of the company growing out of the death of a member of a section crew killed while returning to his home on a hand-car after working hours. It was alleged the engine which struck Elmore was either not equipped with a headlight, or it was burning very dimly, and also that the proper signals for a nearby crossing were not given. The accident happened late in the day, when it was practically dark. Referring to Cahill v. C. N. O. & T. P. Ry. Co., 92 Ky. 345, holding

that one using a private crossing was entitled to the benefits of signals for a nearby public crossing, the court said this rule was applicable only to persons using a private crossing in passing over the railroad track, and that the doctrine had never been extended to any others, and that since Elmore was not using or attempting to use the crossing at the time of his injury the rule stated in the Cahill and similar cases did not apply. The court held that since there was no duty to warn employes such as Elmore of the approach of trains it followed they were not entitled to demand that signals of the approach be given nor to demand any other equipment which might warn them of the approach of trains such as headlights on the engines, the court saying:

"What has been said is sufficient to show that those employed upon railroad tracks are required to take notice of and anticipate the running of trains, and that the operators of trains are not required, save, perhaps, under exceptional and extraordinary circumstances, to anticipate the presence of such employes upon the track or to take such steps as may be necessary to prevent injuries to them, except after discovering their peril."

As an instance of what might be considered extraordinary and exceptional circumstances we turn to L. & N. R. R. Co. v. Mullins' Admr'x, 181 Ky. 148, 203 S. W. 1058. Mullins had been employed for some time as a signal maintainer, and his work compelled him to be frequently on the company's track. In the performance of his duties he was furnished with a tricycle. There was evidence to the effect that the headlight on the engine was not burning at the time of the accident. The court held it was Mullins' duty to exercise ordinary care to learn of the approach of trains, and to keep out of their way. That in the daytime it would be an easy matter to see the train, but if it was dark, as it was at the time he was killed, and no headlight was maintained, he would be deprived of the best and in many instances the only means of seeing the train. That in view of the duty cast upon employees to discover trains, a corresponding duty rests upon the company to furnish the means by which an approaching train may be discovered. Therefore it was said the lower court did not err in holding the company owed to decedent the duty of maintaining a headlight on its engine. A similar ruling was made in Williams' Adm'r v. C. & O. Ry. Co., 181 Ky. 313, 204 S. W.

292. In this latter case the employe was a member of a section gang, and was killed while on his way in a hand-car to meet the section foreman. The court says that ordinarily a railroad company does not owe trackmen, such as decedent, the duty of maintaining a lookout, or to have its trains under reasonable control, or to give timely warning of their approach. The reason for the rule is that section crews move about from place to place, and their presence on the track at any particular point can not be anticipated. The train that killed Williams was not a regular train, but an extra. At the point of accident the fog was so thick that an engine could not be seen until within forty feet of the hand-car, and it was held that under the exceptional circumstances of the case the company was charged with the duty either of maintaining a headlight on its engine to enable those on the hand-car to discover the approach of the train, or of running the train through the fog at such a reasonable rate of speed as not to endanger the lives of employes who had a right to be on the track. As it was admitted the headlight was not burning and there was evidence the train was running at an excessive rate of speed, the surrounding conditions considered it was held a question for the jury whether the operation of the train at the rate shown by the evidence or running without a headlight was negligence.

Therefore, in the absence of extraordinary or exceptional circumstances, the doctrine announced in the Blankenship case must prevail.

Among other things appellee relies upon the failure to comply with what is claimed to be a rule of the company that upon approaching curves, such as existed on crooked hill, it was the duty of those in charge of the engine to give signals of its approach, and, under such circumstances as these, appellee had a right to rely upon their being given. It was decedent's duty to look out for approaching trains; nor was appellant required to moderate the speed of its train or to maintain a lookout or to give signals of its approach unless there was a rule of the company requiring the giving of signals as above stated.

The care which a railroad owes to the public is determinable by principles of law and not by the rules for the guidance of its employes; therefore, so far as the public is concerned, the company's rules are inadmissible

for the purpose of showing either proper care or negligence on the part of the company. L. & N. R. R. Co. v. Dyer, 152 Ky. 264, 153 S. W. 194, 48 L. R. A. (N. S.) 816.

In C. N. O. & T. P. Ry. Co. v. Swann's Adm'r, 160 Ky. 458, 169 S. W. 886, L. R. A. 1915C, 27, Swann was the acting foreman of a crew of men in putting in two water columns at Williamstown, at which point the company maintained a passing track. Swann was killed by a train while standing on the ties of the main track looking into the pit which had been excavated for the south column. Williamstown was not a regular stopping place for the train that killed him. It passed the station on the morning of the accident at a speed of thirty or forty miles an hour. Swann's perilous position was not discovered by the engineer until too late to prevent striking him. This was due to the fact that the train rounded a sharp curve in the track before coming to the point where Swann was standing. The court said it was one of Swann's duties to keep a lookout for approaching trains so that the track would be safe and the men under his charge protected. In this case the rules of the company were introduced respecting the movement of trains at meeting points and at stations where conditions were similar to those that existed at Williamstown to the effect that it was the duty of persons in charge of the train to have it under control; to keep its bell ringing and to proceed at a much lower rate of speed than the train was going at the time of the accident, and it was said that Swann had the right to rely upon the observance of these rules, and therefore a violation of the rules was negligence as to him. It was held that while rules promulgated by the company were intended for the guidance and protection of its employes, that rules regulating the movement of trains were only intended for the benefit and safety of those entitled to rely on them and who came within the class meant to be protected by the particular rules, and Swann was not in that class. Furthermore, the company and its employes, in other branches of the service, had the right to presume Swann would perform the duties devolving on him and the trainmen were relieved of the necessity of exercising toward him the degree of care that other employes, not charged with like duties, might have the right to demand.

In C. & O. Ry. Co. v. Barnes' Adm'r, 132 Ky. 728, 117 S. W. 261, we find that Barnes was a member of a wreck-

ing crew; their train was known as the second section of a train west bound 'for Covington, the tender of the engine of the wrecking crew being in front. This train backed on a siding to wait the passing of some east bound trains, and was there for something over an hour. Barnes and others had been sitting on the main track near the engine of the wrecker, but when the east bound trains approached they left the main track and got on the siding immediately in front of the tender of the wrecking train. When the first section pulled out and had gone a few feet the engineer of the wrecking train proceeded to follow. Barnes was knocked down, run over and killed by the tender. The engineer had no notice of the position of Barnes. The negligence charged consisted of the fact that the engineer of the wrecking train started his engine without having received a signal to do so, and without giving any warning by blowing the whistle or ringing the bell signifying his readiness to start, thus violating the rules of the company, which provided that an engineer before starting his engine should give warning of his intention to so do. The case was reversed for peremptory instruction for the company on the ground that the company did not owe Barnes the duty of ringing the bell or blowing the whistle before starting the train in that the rules of the company were intended for the protection of employes only who are at the time engaged in service connected with their employment. Barnes was merely on the track waiting for another train to pass, where no duty that he owed to the company or within the scope of his employment required him to be. The court held that the duty is imposed upon railroad companies to establish rules for the operation of trains and the government of employes when in the discharge of their duties and the failure to establish and enforce rules which, if observed, would render the employes reasonable protection against the danger of the employment, will make the company liable for accidents and injuries occurring because of such failure. When an employe who is himself free from negligence that would defeat a recovery is injured or killed because of a violation by a superior of the rules, an action for damages will lie. This is grounded on the principle that employes have the right to assume their superiors will observe the rules set down for their guidance and government and will not, in violation of these rules or without

regard to them, do anything that will place other employes in peril.

From what has been said it follows that on the state of the present record appellant was entitled to a directed verdict.

There was an effort to prove the existence of a rule requiring trains to signal their approach to curves. The exact nature, extent and purpose of said rule do not appear—the rule is not in evidence, therefore we are unable to say whether it was such as decedent had a right to rely upon or such as created a situation so extraordinary and unusual as to make the case an exception to the general rule applicable to track walkers. If, however, upon a retrial it is shown by competent evidence, that at the time Hyatt was killed the company had a rule requiring trainmen to give signals before rounding curves, such as existed at crooked hill, signals upon which persons sustaining the same relation to appellant as did decedent, had the right to rely, and there is a conflict in the evidence whether such signals were given, then the case on this question would be for the jury.

The conclusion reached renders it unnecessary to discuss other points raised on appellant's brief.

Wherefore the judgment is reversed for further proceedings not inconsistent herewith.