## C., N. O. & T. P. R. Co. v. Brown, By, Etc.

(Decided October 7, 1921.)

### Appeal from Lincoln Circuit Court.

1. Railroads—Crossings—Signals.—Only those to whom a duty was due may complain of a failure to perform it, and a member of a construction crew injured, when off duty, by a passing train about 180 feet from a railroad crossing and opposite the railroad station in a small village cannot complain of the train's failure to give signals for the crossing or station, since he was not at the crossing or entitled to rely upon station signals at the time of the accident.

2. Railroads—Lookouts.—Except under peculiar circumstances a railroad company does not owe to an employe engaged in construction or repair work a duty of lookout.

3. Railroads—Lookouts.—The fact such an employe lives in camp cars provided by the company and stationed on a sidetrack near its main tracks, is not such a peculiar circumstance as to impose upon the company the lookout duty at the place where the camp cars are situated.

4. Railroads—Use of Right of Way by Employe.—When such employe is off duty, in using the company's right of way in going and returning to the camp cars for his own purposes each party has the same rights and duties as any other strangers have toward each other under similar circumstances.

5. Railroads—Lookouts.—The company at such times owed such employe the duty of maintaining a lookout to avoid injuring him, not enjoined by law, only where by reason of the usual and customary presence of large numbers of persons on or about its tracks, their presence must be anticipated.

6. Railroads—Lookouts—Evidence.—Evidence of such usage as will impose a lookout duty must be confined approximately to the time of day or night at which the accident complained of occurred.

7. Railroads—Lookouts—Evidence.—Evidence that from ten to fifteen persons customarily passed over the tracks at the place of the accident between six and nine o'clock in the evening not sufficient to carry the case to the jury upon the question of whether the company owed plaintiff such duty at about eight p. m.

8. Railroads—Lookouts—Evidence.—Where a lookout duty was not due plaintiff and there was no evidence of negligence after his

peril was discovered, the refusal to direct a verdict for the defendant was error.

K. S. ALCORN and JOHN GALVIN for appellant.

EMMETT PURYEAR, GEO. D. FLORENCE, W. S. BURCH and PURYEAR & CLAY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an appeal from a judgment for $5,000.00 for personal injuries. At the time of the accident, which occurred between eight and nine o'clock on the evening of March 15, 1918, plaintiff was seventeen years of age and a member of a crew employed by defendant to construct fences and repair cattle pens, etc., on its right of way. The members of the crew, some seven or eight in number, lived in camp cars provided by the company, which were moved about from place to place as the work required. On the afternoon of the day of the accident these cars were moved from McKinney to Waynesburg and at about five p. m. were placed on a side track just opposite the depot at the latter place. Between the depot and the side track are the company's two main tracks, the one used by north bound trains being nearest to the side track.

Waynesburg is an unincorporated village containing a bank, five stores, a barber shop, a school house, churches, etc., and from two hundred to three hundred inhabitants. It is "scattered over a right smart little space" and with the exception of the depot and some nine or ten residences is located east of the railroad tracks which run north and south. The school house is about one-half a mile and the business center of the village about seventy-five or one hundred yards from the depot. The main street or public road through the village crosses the railroad tracks at right angles about one hundred and eighty feet south of the depot. The railroad tracks are straight for about one-half a mile on either side of the depot.

After eating supper in the camp car, plaintiff and three other members of his crew went to the barber shop, where they remained until about eight o'clock. They then started to the camp cars for the night, travelling together west along the public road until they reached the railroad crossing. Two of the party, Tom Earles and Buford Switzer, proceeded west across the railroad

tracks and walked north on a cinder path and the station platform toward the depot and did not see the accident. Plaintiff and his other companion, Redford Earles, upon reaching the crossing did not cross the tracks but turned north and walked single file towards the camp cars in the space between the north main track and the side track upon which the camp cars were located. Both plaintiff and Redford Earles testify that upon reaching the railroad crossing they looked in each direction and did not see any train approaching from the south. They further testify that when Redford Earles, being in front, reached the door on the side of the camp car to which they were going, plaintiff stopped and just as Earles had taken hold of the iron hand-hold and put one foot on the stirrup at the door a north bound freight train struck plaintiff and knocked him under the camp car. At the same time a freight train was passing in the opposite direction on the south main track, the engines of the two trains passing each other at or near the crossing mentioned above. The electric headlight on the north bound engine was lighted and in order, but neither the plaintiff nor Earles saw this train or heard any signals from it or knew of its approach. They were facing the south bound train, saw it and heard its signal for the depot or crossing. Other witnesses who were near did not hear any signals from the north bound train, while the engineer and fireman testify that the customary signals were given for the crossing and station and that an additional signal was given to the passing train by blowing the whistle at or near the crossing. The engineer states that he did not see plaintiff until he stepped on the end of the ties when the train was within ten feet of him; that he was running about ten miles an hour, applied the emergency brakes at once and stopped the train as quickly as he could; that the pilot and pilot beam on the front of the engine struck plaintiff. The fireman did not see plaintiff at all.

Most of the questions raised on this appeal depend upon whether or not at the time and place the defendant owed to plaintiff the duty of maintaining a lookout and we will first dispose of this question.

It is familiar doctrine that only those to whom a duty was due may complain of a failure to perform it (C., N. O. & T. P. Ry Co. v. Harrod, 132 Ky. 445, 115 S. W. 699), and as plaintiff was not using the public crossing when he was struck it is unimportant whether or not the crossing signal required by statute was given. L. & N. R. R.

Co. v. Elmore's Admr., 180 Ky. 733, 203 S. W. 876; C., N. O. & T. P. R. R. Co. v. Carter, 180 Ky. 765, 203 S. W. 740. Nor is it important upon this inquiry whether signals were given for the station, since that is not required by statute; the station was not open, and besides plaintiff was not such an employe or member of the public as had a right to rely upon such signals as are ordinarily given for stations.    C., N. O. & T. P. R. R. Co. v. Harrod, *supra*.

It is also well settled that except under peculiar circumstances a railroad company does not owe to an employe such as plaintiff a lookout duty, but that he assumes the risk and must keep out of the way of passing trains.    L. & N. R. R. Co. v. Hyatt, 191 Ky. 85; Williams' Admr. v. C. & O. R. R. Co., 181 Ky. 313, 204 S. W. 292; L. & N. R. R. Co v. Mullin's Admr., 181 Ky. 148, 203 S. W. 1058.

It is insisted, however, that, considering plaintiff as an employe, the fact the company had stationed the cars in which he was required to live in such close proximity to its main tracks is sufficient to bring this case within the exception to the above general rule with reference to employes and impose upon the company the duty of maintaining a lookout, giving signals and having its trains under control so as to avoid injuring him.    But this position in our judgment is not sound, since it would impose upon the company a higher duty toward plaintiff at such times as he was not actively engaged and necessarily upon or about the tracks in the discharge of his duties as an employe, than when he was so engaged.    The company ought not, it seems, to be under a higher duty for the protection of an employe when he is off duty than when actually employed in a hazardous undertaking and his attention is more or less diverted from the danger of passing trains by the duties he is required to perform. His right to be upon or about the tracks at the one time cannot give him a better right to protection or the right to greater protection than when his duties require him to be there.    Besides, if the company owes this duty to members of construction crews that live in camp cars and are constantly being moved about from place to place on its tracks, how much more reasonably would it owe such a duty to section men who reside in the company's section houses permanently situated along its right of way and not otherwise accessible except over or along the railroad tracks?    To impose such a duty upon the company would require it to maintain a lookout for its employes both

night and day upon practically every bit of its tracks, since section houses and camp cars are scattered all along its right of way and their occupants use nearly all of the tracks or right of way going to and from their homes, when off duty, but presumably not to such an extent as when at work.

We are therefore of the opinion that the facts of this case are not so exceptional as to place upon defendant the duty of a lookout to plaintiff as an employe, even if the relationship of master and servant can be said to have existed at the time of the accident and that the duty, if existent, was due plaintiff as a result of the continued and customary usage of the tracks at the place of the accident by such large numbers of people as that their presence must have been anticipated by the company in the operation of its trains. This was the theory upon which the case was submitted to the jury and in our judgment is the only ground upon which it could be maintained.

Counsel for plaintiff insist that under the authority of L. & N. R. R. Co. v. Walker's Admr., 162 Ky. 209, 172 S. W. 517, and Sherman & Redfield on Negligence, vol. I, section 188, sixth edition, the relationship of master and servant existed at the time of the accident and that by reason thereof he was not a trespasser but entitled to the same care for his safety as members of the general public. The conclusion as to the degree of care the company owed plaintiff is, we think, correct and we need not attempt to define the technical relationship that existed at the time of the accident. The section of Sherman & Redfield referred to reads.

"The obligations of the master as stated in this chapter continue in force, not only during all the time in which his servants are actually engaged in his service, but also during the time reasonably occupied by them on his premises in going to and returning from their work and in intervals of rest between. . . . On the other hand, the master's exemption from liability for risks which the servant is held to assume continues for the same time. So long as he is required to use care for the servant's protection as a servant he is only liable as far as a master is liable to a servant. Outside of these limits, these respective liabilities and limitations cease, and each party has the same rights and duties as any other strangers have towards each other under similar circumstances."

If, therefore, plaintiff is to be considered simply as an employe on the premises in the line of his duty at the

time of the accident, he must be held to have assumed the risks, since, as before stated, he was when so engaged charged with the duty of looking out for his own safety with reference to passing trains.

But we do not think this case comes within the purview of the first part of the quoted section, as did the case of L. & N. R. R. Co. v. Walker, *supra*, but rather under the last sentence thereof and as "outside of these limits," with the consequence as stated and as counsel contend that each party has the same rights and duties as strangers have toward each other under similar circumstances.

At the time of the accident plaintiff had completed his day's work, was at liberty to go and come as he pleased and was returning from attending to a matter of his own concern. He was not required and it was not necessary for him to go between the camp cars and the main track, although this was the usual method employed, as he could have reached his car without so doing, but possibly not so conveniently, by entering the cars at the end doors or those on the opposite side of the cars. He was using the tracks, therefore, at the time and place of the accident exactly as do section men and their families in going to and from their places of abode, outside of working hours, with at least the knowledge and acquiescence of the company, and this is in no essential way different from the use that members of the public so frequently make of railroad tracks. Hence it is clear, we think, that the same rule that applies to members of the public using the company's tracks under similar circumstances should be applied here. With reference to this rule, the fact that Waynesburg was unincorporated and that the accident occurred near the station are likewise unimportant as this court has held in many cases, especially more recently, and the rule is now firmly established that a lookout duty not enjoined by law exists only where by reason of the usual and customary presence of large numbers of persons on or about the tracks their presence must be anticipated. Gregory v. L. & N. R. R. Co., 25 Ky. Law Rep. 1986; Adkin's Admr. v. Big Sandy & Cumberland R. R. Co., et al., 147 Ky. 30, 143 S. W. 764; C. & O. Ry. Co. v. Berry's Admr., 164 Ky. 280, 175 S. W. 340; Willis's Admrs. v. L. & N. R. R. Co., 164 Ky. 124, 175 S. W. 18; Cornett's Admr. v. L. & N. R. R. Co., 181 Ky. 132, 203 S. W. 1054; L. & N. R. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084; Spiegle v. C., N. O. & T. P. R. R. Co., 170 Ky. 285, 185 S. W. 1138. And such

usage must be shown to have existed approximately to the
time of the day or night when the accident occurred.
L. & N. R. R. Co. v. Bay's Admr., 142 Ky. 400, 134 S. W.
450; Southern Railway Co. v. Sanders, 145 Ky. 679, 141
S. W. 77.

Only three witnesses attempted to state the extent of
the usage of the tracks at this place in definite terms or
at night time.   H. L. Dumas testified that customarily
between six and nine o'clock at night about ten or fifteen
people passed along the tracks and right of way at this
place.   The testimony of Dr. A. K. Caldwell is the same
in substance.   Monroe Thompson fixed the number ordi-
narily so using the tracks at this place between the hours
of six and twelve at night ''about twenty-five or more,
I guess.''   Taking the maximum figures given, it was
only shown that five persons passed along the tracks at
this place in an hour and this certainly is not a ''large
number of persons'' as the term is used in stating the
rule in the cases cited above; nor is Waynesburg a pop-
ulous community, as that term is often employed in the
same connection.   In the Willis case, *supra,* there was
evidence that as many as one hundred and twenty-five
persons a day customarily used the tracks, which is about
the same average per hour as here if an entire day was
meant but double the average if only during the day time
was meant.   We held such evidence to be insufficient to
carry the case to the jury on the question of whether the
tracks were used by such large numbers of persons that
their presence must be anticipated.

It results, therefore, under the evidence, the defendant
did not owe plaintiff a lookout duty; and there was no
evidence of any negligence, since it is shown without con-
tradiction everything was done to avoid the accident,
after plaintiff's peril was discovered, that could have been
done.   In fact, there was no evidence to show that plain-
tiff was in a position of peril before the train struck him
except the evidence of the engineer that he stepped on
the ends of the ties of the north main track.   The space
between this track and the side track upon which the
camp cars were situated is fixed by everyone except
plaintiff as from six to eight feet from rail to rail, the
evidence largely preponderating in favor of the latter
figure.   Plaintiff states that the distance between the
tracks is ''about three feet or a little more,'' but, as later
developed from his evidence, he meant the distance be-
tween the ends of the ties, and it is not shown how far the

ties extended beyond the rails. It is shown, however, that the pilot beam, which it is proven without contradiction struck plaintiff, extended over the rails about eighteen inches and that the camp cars extended over the rails about the same distance, so that by all of the evidence plaintiff's position between the two tracks where both he and Earles say he was at all times after they left the crossing would have been perilous only if he was walking nearer the main track than the side track and would have been safe if he were in the center of the space or nearer the side track. Plaintiff denies that he stepped upon the ties of the north main track as the engineer testified he did, but there is nothing whatever in the evidence to show in what part of the space between the tracks he was walking and, therefore, nothing to show he was ever in a perilous position prior to the time when he was struck. Consistently with all of the evidence except the engineer's, which does not help his case, he may have been in a position of safety at all times until the very moment the engine struck him.

We are, therefore, of the opinion the court erred in overruling defendant's motion for a peremptory instuction. The question of whether the verdict is excessive is not passed upon.

Wherefore, the judgment is reversed for a new trial consistent herewith.