## ATLANTIC COAST LINE R. R. et al. v. MEEKS.— 208 S. W. (2d) 355.

Eastern Section. July 9, 1947.

Petition for Certiorari denied by Tennessee Supreme Court, October 3, 1947.

Petition for Certiorari denied by United States Supreme Court, February 2, 1948.

522

J. J. McLaughlin and Cox, Taylor, Epps & Miller, all of Johnson City, for plaintiffs in error.

Clarence W. Bradley and Hawkins & Bryant, all of Johnson City, for defendant in error.

BURNETT, J. Meeks, by next friend, brought this suit to recover damages under the Federal Employers Liability Act, 45 U. S. C. Sec. 51 et seq., 45 U. S. C. A. Sec. 51 et seq. Negligence is alleged: (1) In furnishing a defective torch or lamp to illuminate a bunk car; (2) in a fellow employee throwing an exploding torch or lamp so that it fell onto plaintiff; (3) in not having an expert to fill and light said torch; (4) in furnishing "explosive and highly inflammable material, or fluid for use in said lamp or torch"; (5) in not providing a safe place for employees to sleep or wait. The defendants.plead not guilty.

To establish his right to recover the plaintiff must show: (1) That the "relationship of employer and employee exists." Virginian R. Co. v. Early, 4 Cir., 130 F. (2d) 548, 550; (2) that his duties in some way further

or affect interstate commerce, Patsaw v. Kansas City Southern Ry. Co., D. C., 56 F. Supp. 897; Great Northern R. Co. v. Industrial Com., 245 Wis. 375, 14 N. W. (2d) 152; (3) that the carrier was negligent and that this negligence was the proximate cause of the injury, Tiller v. Atlantic Coast Line R. Co., 318 U. S. 54, 63 S. Ct. 444, 451, 87 L. Ed. 610, 143 A. L. R. 967.

These three issues were submitted to a jury under instructions from the court. The jury found for the plaintiff and assessed his damages at $15,000. Their verdict has been approved by the trial court and the case seasonably brought here.

"It is well settled that by the Federal Employers' Liability Act congress took possession of the field of employers' liability in interstate transportation by rail, and that the rights and obligations of persons within its provisions depend upon the act and applicable legal principles as interpreted by the federal courts." King v. Schumacher, 32 Cal. App. (2d) 172, 177, 89 P. (2d) 466, 469.

Fact questions are involved in each of the three issues above set forth. The debatable quality of these issues, the fact that fair-minded men might reach different conclusions, emphasize that these present questions should properly be left to the jury. Tiller v. Atlantic Coast Line R. Co., supra; Milburn v. Chicago, M., St. P. & P. R. Co., 331 Mo. 1171, 56 S. W. (2d) 80; Jester v. Southern R. Co., 204 S. C. 395, 29 S E. (2d) 768, 156 A. L. R. 632; 35 Am. Jur., page 858, sec. 442. The right to trial by jury "is part and parcel of the remedy afforded railroad workers under the Employers' Liability Act." Bailey v. Central Vermont Ry., 319 U. S. 350, 63 S. Ct. 1062, 1064, 87 L. Ed. 1444.

■ In Osborn et al. v. City of Nashville, 182 Tenn. 197, 204, 185 S. W. (2d) 510, 513, our Supreme Court quoted the following with approval.

"The question of the defendant's liability lawfully can be withdrawn from the jury and determined by the court as a question of law, when and only when the facts are undisputable, being stipulated, found by the court or jury, or established by evidence that is free from conflict, and when the inference from the facts is so certain that all reasonable men, in the exercise of a fair and impartial judgment, must agree upon it." 20 R. C. L. 169, 170, 171, sec. 141; Jackson v. City of Nashville, 17 Tenn. App. 413, 417, 68 S. W. (2d) 137.

This is an applicable rule to be followed in the case now before us.

· At the conclusion of the proof—the defendants offered no proof—the defendants moved for a directed verdict basically on the ground that as a matter of law there was no material evidence or inference to be drawn from the evidence upon which the determinative issues might be submitted to a jury. It is around this motion that the main assignment of error is made here. Obviously we must review the proven facts rather extensively.

Meeks, a Negro boy 17 years of age, was employed at Starnes, Virginia, by the defendants to work on their roadbed as a section hand. He was employed in October 1945 and worked for the defendants up to the time of his injury here complained of on January 4, 1946. His home was at Union Mills, North Carolina, about 120 miles from the point of accident. He was attached to what was called the "extra gang." This "gang" did work on the defendants' roadbed from Dante, Virginia, to Erwin and Johnson City, Tennessee.

Because of the fact that local labor for this type of work was insufficient these men were hired at different places and were provided by the defendants with sleeping quarters and a place to eat. For this purpose the defendants furnished "shanty cars" or "bunk cars." These cars were transported from place to place and put on a side track near where their work was to be done. These cars were moved as occasion demanded. The plaintiff and others of the "gang" paid so much per meal for their meals and this was deducted from their pay by the defendants. The plaintiff and others of the "gang" were subject to call at night or any time the defendants needed their services while they were occupying these "shanty cars." On weekends the plaintiff and others similarly employed could go to their homes and were furnished transportation for the purpose by the defendants if they desired to go home, otherwise they remained in the "shanty cars." It may reasonably be inferred that on these occasions, i. e., weekends while these employees were in the "shanty cars" sleeping, etc., that they were subject to call by the defendants to work on the roadbed of the defendants if occasion demanded. These "shanty cars" were pulled to Johnson City, Tennessee, by a freight engine where the plaintiff and others laid side tracks and put in "frogs" on the track of the defendant "Atlantic Coast Line or C C & O." It is stipulated herein that:

". . . The Atlantic Coast Line Railroad Company, et al., engages in interstate commerce through Johnson City, Tennessee, over the railroad tracks through this town, operated by said companies."

During the first week of January 1946 the plaintiff by working New Year's day was able to get in 40 hours

work by 6 P. M. on Thursday night. They were then advised they might lay off and go home until Monday following. It was necessary for the plaintiff to go from Johnson City to Erwin to get his pay check. On Friday morning the plaintiff and another boy in the same class went to Erwin for this purpose. The defendants' foreman who delivered these pay checks did not arrive in Erwin with the checks until almost time for the plaintiff's train to leave. It was therefore necessary for the plaintiff to remain in Tennessee until the following day before he could get a train for home in North Carolina. These two boys cashed their checks did some shopping in Erwin and returned to Johnson City by bus arriving there about 5 P. M. on Friday, January 4, 1946. They then went to a picture show, got some fruit to eat, and returned to the "shanty cars" for the night. They arrived at the "shanty cars" about 10:30 P. M. Angelo Jackson, a boy similarly employed, who had been with the plaintiff during the day, lit the "flambeau" which was provided by the defendants to furnish light in the "shanty cars." When he did so it was discovered that the "flambeau" apparently was out of fluid. Jackson on discovering this fact got the can of fuel provided by the company which was in the "shanty cars" and attempted to refuel the "flambeau." The fuel was supposed to be kerosene. As Jackson attempted to refuel the "flambeau" it exploded and he threw the flambeau from him and it landed on and near the plaintiff causing the injuries herein complained of.

Webster defines "flambeau" as:

"A flaming torch, esp. one made by combining thick wicks invested with a quickburning substance (as pitch); hence any torch."

This torch was the only light the occupants of this "shanty car" had. It was furnished, and the fuel to be used therein, by the defendants. The occupants of the "shanty car" had used this torch since they were employed. On the night of the injury there were at least five of the "gang" occupying the "shanty car." The "shanty car" was in the yards of the defendants where it was placed by them. After the accident gasoline could be plainly smelled. It is inferable from the proof that the defendants negligently allowed this fuel can to be filled with gasoline instead of kerosene and that this highly inflammable substance caused the explosion.

We should say here that the above detailed facts from the proof, in so far as the relationship of employer and employee are concerned, apply equally to Angelo Jackson—the boy who lighted the torch.

Upon the foregoing state of facts the trial judge submitted the determinative issues to the jury. By their verdict they have decided each in favor of the plaintiff. The defendants say that at the time of the injury Meeks was not engaged in the duties of his employment but was at best merely a licensee using the railroad premisses for his own convenience.

The better reasoned cases, we think, include within the scope of employment "not only actual service, but also *those things necessarily incident thereto,* . . ." (Italics ours) Virginian R. Co. v. Early, supra, and cases there cited. The court in the Virginian R. Co. case goes on to say:

"This rule has been applied to such ordinary circumstances as resting temporarily, procuring drinking water, eating lunch on the premises, etc. (citing authorities including United States Supreme Court Cases) . . .

"We think that these decisions manifest a clearer understanding of the actual conditions of employment than those which seem to hold the strict view that any temporary departure from the performance of duty suspends for the time being the relationship of employer and employee, even though it constitutes no interference with the work in hand and is not objectionable to the employer; . . ." 130 F. (2d) at page 550, 551.

The third headnote to the case above quoted from succinctly states the facts upon which the carrier was held held liable under the act; it is:

"Where railroad machinist, after arriving at machine shop before starting days work, proceeded to lunchroom maintained by a company for convenience of railroad's employees, to obtain cup of coffee, and when machinist reached a point 200 feet from machine shop when returning from lunchroom, afireman opened blow-off valve of engine running on nearby track and machinist was struck by escaping steam, machinist was acting in his capacity as 'employee' and within the 'scope of his employment' at time of accident, so that action could be maintained under Federal Employers' Liability Act, for death allegedly resulting from the accident." Federal Employers' Liability Act, Sec. 9, 45 U. S. C. A. Sec. 59.

This case was tried before Judges Parker, Soper and Dobie of the Fourth District. They are all outstanding Federal Judges with much experience in this type of litigation.

■ On the record before us it is shown without contradiction that the place of abode was furnished by the railroad, on their premises, so that they might have the services of these laborers; that it was within the contemplation and undoubtedly of the employer and em-

ployee that the employee use this place of abode even
though no work was to be done the day following; that
these employees were subject to call for work of the em-
ployer during the night when they were not in actual
service; that it was necessarily incident to the employ-
ment to furnish this place because these laborers were
recruited from various states and to keep them on the
job a place of abode was provided. It is clearly infer-
able that on the night of the accident herein, i. e, if the
accident had not happened, the plaintiff could have been
called to work by the employer if necessity demanded.
The instrumentality that caused the injury was furnish-
ed by the employer for use of the employees. There is
nothing herein to indicate that what the plaintiff did was
inconsistent with his duty to his employer. It seems ap-
parent that there was material evidence presented to
the jury wherein they could find that the relation of em-
ployer and employee or master and servant existed be-
tween the parties at the time of the injury. See 4 La-
batt's Master & Servant, 4684, section 1556; Milburn v.
Chicago, M., St. P. & P. R. Co., 331 Mo. 1171, 56 S. W.
(2d) 80, 89, and authorities there cited.

Apparently it is conceded that there is sufficient proof
of negligence submitted to the jury, if the plaintiff was
acting within the scope of his employment and the em-
ployment was in interstate commerce, to create liability.
There is no error assigned on this feature (negligence)
of the case nor any appreciable comments thereon.

It is very forcibly argued that ''the proof fails to show
that either plaintiff or Angelo Jackson were engaged in
work in interstate commerce at the time of plaintiff's in-
juries; . . . or'' were engaged in transporting

goods in interstate commerce at the time plaintiff was injured.

■ After giving this argument much thought and equally as much investigation we think the correct position of the court should be as stated by the Supreme Court of Wisconsin in Great Northern R. Co. v. Industrial Commission, 245 Wis. 375, 14 N. W. (2d) 152, 154, where it is said:

"The 1939 amendment to the Federal Employers' Liability Act has broadened its scope, and the test as to whether an employee of a carrier is within the Act in any particular case depends on whether any part of his duties as such employee shall be the futherance of interstate or foreign commerce, or shall, in any way, directly or closely and substantially, affect such commerce; if it does, such employee is within the protection of the Act. In Ermin v. Pennsylvania R. Co., D. C. E. D. N. Y. 1941, 36 F. Supp. 936, 940, the court said:

" 'This case involves the construction of the Federal Employers' Liability Act as amended by the Act of congress, approved August 11, 1939. The Court is informed that there are no reported decisions construing this amendment.

" 'The discussions in Congress indicate that it was the intent of the lawmakers to bring within the scope of the Federal Employers' Liability Act all employees whose work at the time of injury was not in actual interstate transportation or a part of it, but any part of whose work was in furtherance of interstate commerce, or in any way affected such commerce directly, closely and substantially.'

"In that case a brakeman was injured while employed as a member of a switching crew engaged in moving

from one place in the state to another place in the same state dead engines which had been out of service for several months and which were then to await repairs, and which had been theretofore and would thereafter be used in interstate commerce.

"In a later case, Agostino v. Pennsylvania R. Co., D. C., 50 F. Supp. 726, 728, decided by the same court July 2, 1943, the court said:

" 'The sole question presented—Was the plaintiff engaged in interstate commerce within the purview of the Federal Employers' Liability Act as amended by the Act of Congress, approved August 11, 1939? . . .

" 'The weight of authority is to the effect that the amendment should be liberally construed so as to extend the protection of this act to all employees, any part of whose duties furthers or affects interstate commerce "in any way." '

"In that case the plaintiff, when injured, was working on new construction consisting of a road bed and tracks of approximately 8,000 feet in length to be connected at both ends with existing tracks and which was to replace a portion of such existing tracks. Plaintiff was injured December 31, 1940, while he and other employees were spreading cinder ballast for surfacing one of the new tracks. The actual transportation of revenue freight in interstate commerce began about one month after the accident. The court said, 50 F. Supp. at page 729:

" 'Was the plaintiff's work in "furtherance" of interstate commerce? Did it "in and way" futher or "affect" interstate commerce? Can it be said that the plaintiff's work was not "in any way" in "futherance" of interstate commerce? Did it not substantially "affect" such commerce. . . .

" 'The conclusion seems inescapable that the construction work, while new, was only an improvement such as an extension, alteration, replacement or repair and, therefore, the plaintiff was engaged in interstate commerce.'

"In Edwards v. Baltimore & O. R. Co., 7 Cir., 142, 131 F. (2d) 366, 369, in reference to the 1939 amendment to the Federal Employers' Liability Act, the court said:

" 'Despite any question as to whether plaintiff might have recovered under the original act (see New York Cent. R. Co. v. Marcone, 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892), it is clear that he is within the scope of the amendment. Under the original statute experience demonstrated continued difficulty in ascertaining when the work of an employee was part of interstate commerce. The amendment, much wider in scope, was inspired by a desire to avoid such confusion. Congress' intent to include any employee who performs services which in any way further or affect interstate commerce is clear. Ermin v. Pennsylvania R. Co., D. C. N. Y., 36 F. Supp. 936; Southern Pac. Co. v. Industrial Accident Commission, Cal. App., 113 P. (2d) 768, 779, affirmed by California Supreme Court in 19 Cal. (2d) 283, 120 P. (2d) 888; Priggue v. Baldwin, 154 Kan. 708, 121 P. (2d) 183; Louisville & N. R. Co. v. Potts, (178) Tenn. (425), 158 S. W. (2d) 729. Inasmuch as this locomotive was used in interstate commerce and was destined to resume such service as soon as repaired, plaintiff, engaged in repairing it and fitting if for further commerce, thereby furthered and substantially affected interstate commerce within the meaning of the law.' "

In the case last above quoted from an employee working on ore docks in the winter for use in interstate commerce in the spring was within the act. The case of Louisville & N. R. Co. v. Potts, 178 Tenn. 425, 158 S. W. (2d) 729, fully supports this viewpoint.

■■ To all intents and purposes it is conceded that the day's work of the plaintiff was working on the tracks of the defendants who were engaged in interstate commerce. The proof unquestionably shows this to be true. The only logical conclusion then is that "if the employee's injury arose out of and in the course of his employment as a necessary incident thereto, it arose out of and in the course of interstate commerce, . . ." Northwestern Pac. R. Co. v. Industrial Acc. Commission, 1946, 73 Cal. App. (2d) 367, 166 P. (2d) 334, 338. As heretofore said, the jury has concluded under facts presented to it that the relationship existed. We clearly feel that these facts show that this was at the least an incident to employment even though no actual work was being done at the time. The relationship should be governed by the character and purpose of the services which have been performed as well as those which have been performed as well as those which are about to be performed. These basic principles were enunciated in Erie R. Co. v. Winfield, 244 U. S. 170, 173, 37 S. Ct. 556, 557, 61 L. Ed. 1057, Ann. Cas. 1918B, 662; North Carolina R. Co. v. Zachary, 232 U. S. 248, 260, 34 S. Ct. 305, 58 L. Ed. 591, 596, Ann. Cas. 1914C, 159, and other cases herein referred to. See also Brock v. Chicago, R. I. & P. R. Co., 305 Mo. 502, 266 S. W. 691, 36 A. L. R. 891, in which the United States Supreme Court denied certiorari in 266 U. S. 634, 45 S. Ct. 226, 69 L. Ed. 479; Chicago M.,

St. P. & P. R. Co. v. Kane, 9 Cir., 33 F. (2d) 866, which is cited with approval in the Virginian R. v. Early, supra.

The defendants herein reply on Bourne v. Southern R. Co., 225 N. C. 43, 33 S. E. (2d) 239, 241. The facts of this case show that Bourne, an experienced railroad engineer, was on the defendant's engine operating it on the railroad's permit "to learn the road" and was left in charge of the engine by the regular engineer contrary to a rule of the company. It was held that Bourne was not an "employee" because he was acting on his own, outside the scope of his employment, and was voluntarily doing something the employer did not employ him to do. Obviously this case is not applicable under the facts of the instant case.

The case of Cincinnati, N. O. & T. P. R. Co. v. Brown, 192 Ky. 724, 234 S. W. 455, 458, is also relied on. Likewise this case is not applicable. The turning point of the case is shown by the following language from the opinion, to-wit:

". . . And was returning from attending to a matter of his own concern."

A number of other cases are cited in the excellent brief of the defendants and we have read many more pro and con on the subject. Many of these apply the strict view and were delivered prior to the 1939 amendment to the act. We see no point in reviewing each of these cases as to do so would make this opinion entirely too long—it is necessarily very long as it is. We think the decisions we have cited "manifest a clearer understanding of the actuual conditions of employment than those which seem to hold the strict view . . ." Virginia R. Co. v. Early, supra [130 F. (2d) 551].

The plaintiff herein first filed a suit for workman's compensation under the Tennessee Act. Code 1932, Sec. 6851 et seq. The defendants answered denying liability and said:

"For further defense to the petition, the defendants assert that on January 3, 1946, Petitioner Meeks was employed by the defendants as one of their section hands and his duties as such pertained to the furtherance of interstate commerce, in that he worked on tracks of the defendants and used by them in the operation of both interstate and intrastate trains. Petitioner's employment, therefore, was not covered by the Workmen's Compensation Law of Tennessee."

 Following this answer the present suit was filed. The two suits were tried together, the instant one by the court and jury, the compensation suit by the court alone. This was done over objection of the defendants. We think the court very properly heard the two actions together. There is not a scintilla of indication herein that the jury knew of the compensation suit. There was absolutely nothing done that might in the slightest prejudice the defendants in the employers' liability case. We think the trial court did his duty and was plainly trying and did expedite the trial of cases in hearing the two cases as he did. In doing so he saved the time of the court, costs, etc., that would have been entitled if the cases had been tried separately. This was done with no prejudice to the defendants. In Southern R. Co. v. Grisby, 155 Tenn. 285, 292 S. W. 3, it is strongly indicated that such procedure is permissible—and advisable.

Various portions of the court's charge to the jury are assigned as error. We do not deem it necessary to take up each of these seriatim. Many of these complaints

have already been answered in our general discussion heretofore. On reading the charge as a whole we think it very clearly and fairly presents the issues to the jury. There is nothing prejudicial therein. There were no special requests for other or different instructions.

The jury returned a verdict for $15,000 in favor of the plaintiff. The amount of the verdict is assigned as error because it is said that it "is so excessive and unreasonable as to evince prejudice, passion and caprice upon the part of the jury." The trial judge approved this verdict and rendered judgment thereon.

■ This 17 year old Negro boy received third degree burns over several parts of his body. He was in a hospital for nearly a year before trial. He had doctor and hospital bills of over $2,000. He had an earning capacity of in excess of $100 per month. He has and will suffer untold torture. He is scarred and permanently crippled. Need more be said.

■■ In Town of Clinton v. Davis, 27 Tenn. App. 29, 42, 177 S. W. (2d) 848, 853, we said in part:

"The author of American Jurisprudence in volume 15 thereof at page 622 has stated the rule as follows:

" 'Moreover, the question of the excessiveness of a verdict is generally one for the determination of the trial court in the first instance, and its action in granting or refusing to grant a new trial on that ground will not be disturbed on appeal unless an abuse of discretion is shown.'

"Verdicts rendered by juries are in no wise uniform. We have never formulated any mathematical rules of computation in negligence cases upon which we can make these verdicts and judgments uniform. In compensation cases we do have a uniform schedule by statute upon

which different types of injuries are uniformly compensated. Liability under compensation statutes is entirely different from liability in a negligence case. We should not use this table as a guide. If the legislature in its wisdom desires to establish such a uniform schedule in negligence cases it is up to them and not the judiciary. It is our duty to take into consideration the nature and extent of the injury, the suffering, expenses, diminution of earning capacity, age, expectancy of life and amount awarded in other similar cases in our decision of this question.''

For the reasons assigned we think the judgment should be affirmed.