**BLUE RIDGE MINING COMPANY, a Corporation, Appellant,**

v.

**Beckham DOBSON, Adm'r of the Estate of Ardoth Fugate, Deceased, Appellee.**

Court of Appeals of Kentucky.

Feb. 7, 1958.

Willis W. Reeves and Maxwell P. Barret, Hazard, for appellant.

Don A. Ward and William A. Melton, Hazard, for appellee.

CAMMACK, Judge.

This action was instituted in November, 1956, by the appellee, Beckham Dobson, administrator of the estate of Ardeth Fugate, against the appellant, Blue Ridge Mining Company, to recover damages for its alleged negligence resulting in the death of Ardeth Fugate. This appeal is from a judgment in the amount of $15,000 in favor of the appellee.

The appellant contends that the trial court should have sustained its motion for a directed verdict because (1) no negligence on its part was proven; (2) Ardeth Fugate was a licensee to whom it owed no duty; (3) the proximate cause of the injury was either the negligence of the decedent or the negligence of a third party; and (4) the doctrine of assumed risk bars recovery by the appellee.

The appellee argues that (1) the deceased was employed in violation of the child labor statute, and the appellant therefore became an insurer of his safety; and (2) the appellant is estopped from claiming contributory negligence and assumed risk.

Ardeth Fugate was 21 days less than 16 years of age at the time of his death on October 9, 1956. He was a resident of Chicago, Illinois, and was visiting relatives in Kentucky. Some of these relatives, his uncle, James Fugate, and his cousin, Haven, a son of James, were employees of the Blue Ridge Mining Company at its tipple at Bulan, Perry County. Haven Fugate was in charge of operations at the tipple during the absence of the president and general manager of the Company, Edward H. Degan. James Fugate picked bone and slate. During his visit Ardeth occupied part of his time by riding to and from the tipple and the mine in a coal truck driven by another cousin. He had ample opportunity to become familiar with the tipple operations on these trips. Trucks were backed up the ramp to be weighed and unloaded at the tipple. The trucks were operated independently.

Several days prior to the death of Ardeth, Degan told Haven to get someone to clean the coal dust from beneath the loading ramp which ran from the ground to the tipple, its height being about eight and one-half feet at that point. On the day before Ardeth's death Degan again spoke to Haven concerning the necessity of removing the accumulated dust and told him to pay as much as $5 to have the work done. This remark was overheard by Ardeth who later asked Haven for the job. That night Haven questioned his father about the advisability of employing Ardeth. They decided that the work wasn't too dangerous for the boy, and on the following morning Haven allowed Ardeth to begin cleaning out the dust.

After Ardeth had been working for an hour or more James noticed that the boy was getting "black" from the dust and told Haven, "When you go back down there tell the boy to quit, and if he needs any money I will give it to him." Haven had given Ardeth 50 cents earlier in the day and when he went down below the ramp and told him to quit he gave him an additional 90 cents out of his own pocket. Ardeth put his shovel away and his activities for the short time thereafter before his death are mostly unaccounted for. Haven said, "I can't state now whether he was ever out on the ramp any more or not, from the time he done that, but prior to him getting killed he was at the scale house door with me."

The scale house is built in such a manner that its back wall faces the ramp. The door is thus in the opposite side of the house from the ramp. A person standing in the scale house could not see the ramp, but due to the length of the ramp a truck at its beginning is visible from outside the scale house door. A small walkway runs from the door up to the ramp, the elevation of the scale house floor being below that of the ramp. The usual manner of leaving the scale house is to walk up the walkway and down the ramp, but this is not the only means of egress from the house to the highway.

Ardeth was waiting at the scale house to catch a ride back across the mountain in the truck being driven by his cousin. One truck had just descended the ramp and Haven saw the next truck start to get in position to back up the ramp. When this truck was 15 feet or so from the ramp Haven left Ardeth and went into the scale house. At the door Ardeth was not in a position of danger from the truck. After entering the scale house Haven heard a sound which he thought was caused by the truck hitting a post as it backed up the ramp. When he came out to investigate he found that the truck had backed over Ardeth. The boy was lying about 12 feet down the ramp from the scale house, with his feet extending down grade. He had an abrasion on his forehead, "just a small skinned place," and bruise marks over his abdomen. Haven carried the injured youth off the ramp. An ambulance was called and Ardeth was taken to a hospital where he died some 10 minutes after arrival.

The construction of the ramp at the Blue Ridge Mining Company's tipple necessitates backing trucks onto and up it for unloading. There are some 25 or 30 similarly constructed ramps in Perry County. The driver of the truck that ran over Ardeth stated that a lookout told him the ramp was clear when he commenced backing onto it. He watched in his rearview mirror to make sure that he didn't run the truck over the side of the ramp, but due to the height of the truck bed and the length of the truck only the edge of the ramp on the driver's side is visible to a driver when he backs up the ramp. The driver said he felt the truck "give up to the left" when he was about half way up the ramp. He thought he had run into the post so he drifted forward to recommence his run. It was then that he was told that his truck had hit the boy.

 The appellant argues that no negligence whatever was proven so far as it is concerned, and that the sole cause of the accident was the negligence of Ardeth Fugate. We are disposed to agree with this contention. Ardeth was nearly 16 years of age and, had he been in school in Chicago rather than visiting his relatives, he would have been attending his first year of high school. He had been present in the vicinity of the tipple for a number of days before the accident and no reason is advanced why a boy of his age, with apparently normal intelligence, could not have seen the dangers present there. Immediately before the accident he was in a position of safety (with Haven at the scale house door) and it was not shown that any act of the appellant caused him to leave that position. Haven, while standing beside Ardeth, had seen the truck which struck the boy commence its run for the ramp. There was nothing to prevent Ardeth from seeing the truck had he been observing reasonable precautions for his own safety.

 The appellee argues that Ardeth was employed in violation of the child labor statute, KRS 339.230(2) (d), and that the appellant thereby became an insurer of his safety. Louisville Woolen Mills v. Kindgen, 191 Ky. 568, 569, 231 S.W. 202. But even if the evidence should be construed as establishing employment of Ardeth by the appellant, we think that employment had ceased before the unfortunate accident. It ceased when Haven told him to stop work and gave him the 90 cents below the ramp. We agree with the appellant's contention that Ardeth, while wait-

ing for a ride back across the mountain, was on the ramp as a mere licensee. He was on the ramp at that time solely upon a purpose and mission of his own. Nelson's Adm'x v. Kitchen Lumber Co., 276 Ky. 3, 122 S.W.2d 1037.

Since no negligence was proven on the part of the appellant, it is unnecessary to discuss the questions of contributory negligence and assumed risk. It follows from what has been said that the appellant's motion for a judgment notwithstanding the verdict should have been sustained because it was entitled to a directed verdict.

The judgment is reversed, with directions that it be set aside, and for the entry of a judgment consistent with this opinion.