Richard **CHATMAN**, b/n/f Bernice Chatman and Bernice Chatman, Plaintiffs-Appellants,

v.

**JAMES H. DREW SHOWS, INC.,**
Defendant-Appellee.

No. 72–1176.

United States Court of Appeals,
Sixth Circuit.

Sept. 6, 1972.

---

Wendal D. Jackson, Bristol, Tenn., for plaintiffs-appellants; Slaughter & Jackson, Bristol, Tenn., on brief.

J. Paul Coleman, Johnson City, Tenn., for defendant-appellee; Simmonds, Herndon, Johnson, Coleman, Brading & McKee, Johnson City, Tenn., on brief.

Before EDWARDS, PECK and KENT, Circuit Judges.

JOHN W. PECK, Circuit Judge.

This is a personal injury action by an employee of a traveling carnival against his employer seeking recovery for injuries he received when he was accidentally run over while asleep under one of the carnival's trucks. The case was tried in the District Court without a jury and the Court held that the suit was barred by application of the fellow servant doctrine under the Kentucky law. This appeal was then perfected, contending that the District Court was in error in applying the Kentucky fellow servant doctrine under circumstances herein present. The cause of action arose in Kentucky and jurisdiction is based upon diversity of citizenship.

The pertinent facts are as follows. The carnival is owned and operated by the defendant, James H. Drew Shows, Inc. It travels throughout the Appalachian coal region between May and October, setting up its rides and other amusements in small towns and county fairs. The carnival's employees travel with the show from town to town and the show frequently hires some local help when it arrives in a new town.

In May of 1970, the show visited Bristol, Virginia, and the plaintiff Richard Chatman was hired at a rate of $60.00 per week to help set up and tear down the rides and to perform similar tasks. He was 18 years of age and had a sixth grade education. He lived at home while the show stayed in Bristol, but when it started traveling, Chatman purchased a tent from the carnival and paid for it weekly. Neither Chatman nor the other employees were furnished sleeping accommodations.

Although the employees generally had tents and were allowed to erect them on the carnival grounds, some of them chose to and did sleep on the rides (when the carnival was closed) or in the trucks when they were not being used to transport the rides and gear. The plaintiff Chatman and a former co-worker, Steve McCullough, testified in the trial court that they also slept under the trucks when it was raining or when the weather was bad, and that other employees engaged in the same practice. They did this even though signs were posted at the carnival office warning employees not to sleep under the trucks. The carnival management agreed that the employees were permitted to sleep in tents, on the rides or in the trucks, but stated that the employees were verbally warned not to sleep under the trucks.

On the evening of June 20, 1970, the carnival had concluded its stay in Cumberland, Kentucky, and by 2:00 A.M. the following day, Sunday, the ride to which Chatman was assigned was torn down

and loaded in a truck. Chatman then rode with the truck to Hazard, Kentucky, arriving there about 7:00 A.M. Sunday morning. The truck proceeded to the carnival site in Hazard and waited several hours for instructions by its Unit Manager directing it to the exact location for its ride. During this waiting period, the drivers were required to stay with their trucks, but the other employees, such as Chatman, were free to do as they chose.

On the morning in question, there was a drizzling rain outside. Chatman stated that he was sick and that he had not slept for a couple of days, and that he decided to put a cot under one of the trucks and go to sleep. Upon arrival of the Unit Manager a few hours later, the truck was directed to move to a ride location. No one saw Chatman or knew he was there, and when the truck moved out one of his legs was run over and severely damaged.

This suit was brought as a common-law tort claim, and the District Court was first confronted with the question of whether the action was barred by the Kentucky Workmen's Compensation Act, Kentucky Revised Code § 342.001 et seq. If applicable, it afforded Chatman an exclusive remedy against his employer. For the Kentucky Workmen's Compensation law to apply the injury must "[arise] out of and in the course of [the claimant's] employment." K.R.C. § 342.005. In holding that the workmen's compensation remedy was not a bar to Chatman's action, the District Court stated:

"It is clear that the injury here to Mr. Chatman neither arose out of, nor in the course of, his employment. Mr. Chatman, of course, went to sleep by design, but it was not required that he do so. At the time Mr. Chatman voluntarily chose to sleep, he might very well have chosen to be away from the carnival site, viewing whatever sights the local town had to offer. * * * *Mr. Chatman's activity at the moment of injury was not work-connected but was, rather, a matter of personal choice with no purpose related to his employment,* (citation omitted). This Court therefore finds that Mr. Chatman may maintain this suit as a common-law action against his employer." (Emphasis supplied.)[1]

Having found that Mr. Chatman could not have collected benefits for his injuries under the Kentucky Workmen's Compensation Act because he was not acting within the scope and course of his employment at the time of his accident, the Court then held that his common-law claim was barred because he was in the *"status of a fellow servant* of his co-employee [the truck driver]" which precludes recovery under the doctrine of fellow servant. (Emphasis supplied.) In other words, the Court considered his location upon the premises of the carnival at the time of the injury and the fact that he was injured by a co-employee acting in the course of his employment to be the controlling factors in deciding the applicability of the Kentucky fellow servant rule. We, however, cannot agree with the District Court's conclusion that, under Kentucky law, Chatman's presence upon the premises of his employer when he was injured by a fellow employee necessarily places him within the category of a servant for purposes of the fellow servant doctrine.

Rather, Chatman's own activity and his purpose in engaging in that activity is relevant in determining his status as a servant of his master, the appellee James H. Drew Shows, Inc. That this is the proper approach can be seen in Cincinnati, N. O. & T. P. Ry. Co. v. Brown, 192 Ky. 724, 234 S.W. 455 (1921), where a railroad employee was injured when he was struck by a train

---

1. We have not considered the applicability of the workmen's compensation law in this case as that question was not briefed or argued on this appeal.

as he was about to enter a camp car provided for him by the railroad as his living quarters. The employee had been to a barber shop on his own time and was returning by foot to his camp car at the time of the accident. Even though the plaintiff was upon his employer's premises at the time of the accident and was injured through the actions of a co-employee, the Kentucky Court of Appeals concluded that the relationship of master and servant did not exist between the railroad and the injured employee. While the accident occurred in an area available to the public, the court focused upon the employee's activity and the purpose of his activity as well as the location of the accident in determining servant status. The court relied in part upon the fact that he had completed his day's work, was free to go where he pleased, and was on a mission of his own when the accident occurred.

Relevant also in this regard is Blue Ridge Mining Co. v. Dobson, 310 S.W.2d 52 (Ky.1958). In that case, a boy had been paid for doing certain work in a mine and was waiting for a ride to take him to a relative's house where he was staying. While he was waiting on the premises of the mine, a truck backed over him resulting in his death. The court found that even if the decedent had been an employee of the mine owner on the day he was killed, no employment relationship existed at the time of the accident. The court reasoned that the decedent was "solely upon a purpose and mission of his own," at the time he was killed. Blue Ridge Mining Co. v. Dobson, *supra*, 310 S.W.2d at 55. The Kentucky Court of Appeals was not persuaded by the decedent's bare presence upon the employer's premises in viewing the status of the deceased worker.

In A. Bentley & Sons Co. v. Bryant, 148 Ky. 634, 147 S.W. 402 (1912), an employee of a building contractor was injured when steam and hot water fell on him as he was walking through a passway on his way to work on the fifth floor of a building. The court held that the master-servant relationship existed at the time of the accident because the employee "was as much a servant in returning to the place of work as he would have been upon resuming work at the place of its performance." Here, again, the court was concerned with the injured employee's activities and his purpose in engaging in those activities in finding the existence of the master and servant relationship rather than confining the inquiry to whether the accident occurred upon the work premises. The facts that he was engaged in *activity* which was work-connected and was on his employer's premises at the time of the injury were the controlling factors in determining the employee's servant status.

In contradistinction to the position herein adopted, in a relatively recent case the Kentucky Court of Appeals was confronted with the traditional fellow servant situation. Ruble v. Stone, 430 S.W.2d 140 (Ky.1968). Therein two boys were working for their grandmother on her farm and one of them was injured due to the negligence of the other. They were driving a tractor at the time of the accident, and were engaged in the activities to which they were assigned by their grandmother. The court indicated that because they were acting within the scope of their employment or in connection with their employment, they were the fellow servants of their master at the time of the accident.

█ In turning to the facts of the instant case, we find that Chatman was not in the status of a servant at the time of the accident. He clearly was not engaged in any activity in the furtherance of his master's work. Although he happened to be sleeping on the carnival site, he could as well have been sleeping in town or anywhere he chose. This was, as the District Court found, entirely a matter of his own concern and over which the carnival exercised no control. Chatman's only obligation to his employ-

er was to be ready to set up the rides later in the day. He did not fall asleep while in the performance of his duties. Neither was he coming to or leaving his work at the time of his injury. The plain fact is that his activity was in no way connected with his employment. Indeed, it would be a harsh rule that would require him to assume the ordinary risks of his employment while asleep and completely separated from the duties of his employment, and we can find no support in Kentucky law for such a rule.

In the present circumstances, Kentucky would be more likely to follow an old Eighth Circuit decision, Orman v. Salvo, 117 F. 233 (8th Cir. 1902), cited with approval in O'Neil v. Pittsburg, C., C. & St. L. R. Co., 130 F. 204, 208 (W.D.Ky.1904). In that case, the employer provided tents for laborers to live in while they were off duty as part of the compensation for their work. The workers were engaged in the excavation of a tunnel, which required blasting operations and the employees' tents were located in close proximity to the excavation work. The plaintiff, a laborer, was injured when a blast was set off near a tent in which he was sleeping. The Court said:

> "But while engaged at his meals or wrapped in slumber [the plaintiff] was performing no services for the master, and being in the performance of no employment, but obtaining and enjoying compensation from the master, he was not during such time the fellow servant of any of the employes who were at work, about which he was in no way engaged or assisting. He was not in the condition of a servant who is being conveyed in a car to his work, but was as much separated from it as if he had been sleeping in his own home a mile away." Orman v. Salvo, *supra*, 117 F. at 235.

The judgment of the District Court is reversed and the cause is remanded for further proceedings consistent herewith.